

U.S. Department of Justice

*United States Attorney
District of Maryland
Northern Division*

NOV 0 3 2008

*Rod J. Rosenstein
United States Attorney*

*Solette A. Magnelli
Assistant United States Attorney*

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

DIRECT: 410-209-4867
MAIN: 410-209-4800
FAX: 410-962-0716
TTY/TDD: 410-962-4462
Solette.Magnelli@usdoj.gov

October 28, 2008

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

DEC - 9 2008

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

Leslie Whitcomb Fierst, Esquire
Assistant Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, Maryland 20770

Re:   U.S. v. Adriana Delcid a/k/a Adriana Delcid de Castro

Dear Mrs. Whitcomb Fierst,

This letter, together with the Sealed Supplement, confirms the plea agreement that has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have her execute it in the spaces provided below. If this offer has not been accepted by November 11, 2008 it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.   The Defendant agrees to waive indictment and plead guilty to a Criminal Information that will charge her with Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i). The Defendant admits that she is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2.   The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

   a)   that the Defendant knew that property involved in a financial

Revised 8/8/08

GOVERNMENT EXHIBIT

transaction represented the proceeds of some form of unlawful activity;

b) that the defendant conducted or attempted to conduct such a financial transaction that in fact involved the proceeds of a specified unlawful activity; and

c) that the Defendant did so with the intent to promote the carrying on of that specified unlawful activity.

## Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: imprisonment for twenty years without parole, followed by a term of supervised release not to exceed three (3) years and a fine of $500,000 or twice the value of the property laundered. In addition, the Defendant must pay $100.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order her to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if she serves a term of imprisonment, is released on supervised release, and then violates the conditions of her supervised release, her supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, she surrenders certain rights as outlined below:

a. If the Defendant had persisted in her plea of not guilty, she would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. The Defendant has the right to have her case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against her. By agreeing to proceed by way of Information, she is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

Revised 8/8/08

      c.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

      d.     If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in her defense, however, she would have the subpoena power of the Court to compel the witnesses to attend.

      e.     The Defendant would have the right to testify in her own defense if she so chose, and she would have the right to refuse to testify. If she chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from her decision not to testify.

      f.     If the Defendant were found guilty after a trial, she would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against her. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

      g.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that she may have to answer the Court's questions both about the rights she is giving up and about the facts of her case. Any statements the Defendant makes during such a hearing would not be admissible against her during a trial except in a criminal proceeding for perjury or false statement.

      h.     If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find her guilty.

      i.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

### Advisory Sentencing Guidelines Apply

5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the

advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

  6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

  a. Pursuant to U.S.S.G. § 2S1.1(a)(1), the base offense level is that of the specified unlawful activity, specifically, a violation of 18 U.S.C. § 2421.

  b. Pursuant to U.S.S.G. § 2G1.1(a)(2), the base offense level is fourteen (14).

  c. Pursuant to U.S.S.G. § 2G1.1(d)(1), the offense involved more than one prostitute or victim. Therefore, the multiple count rules apply under Chapter Three, Part D. Because there are more than 5 victims involved, each having a base offense level equally serious as the count of conviction, there are more than 5 units and a 5 level increase is warranted. U.S.S.G. § 3D1.4(a).

  d. Pursuant to U.S.S.G. § 2S1.1(b)(2)(B), a two (2) level increase is applicable as the conviction is under 18 U.S.C. § 1956.

  e. The adjusted offense level, before any reduction for acceptance of responsibility, is **21.**

  f. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for her criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of her intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about her involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw her plea of guilty. Therefore, the adjusted offense level is **18**.

  7. The Defendant understands that there is no agreement as to her criminal history or criminal history category, and that her criminal history could alter her offense level if she is a career offender or if the instant offense was a part of a pattern of criminal conduct from which she derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend a sentence within the guidelines.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

### Waiver of Appeal

11. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed, including any fine, term of supervised release, or order of restitution and any issues that relate to the establishment of the advisory guidelines range, as follows: the Defendant waives any right to appeal from any sentence within or below the advisory guidelines range resulting from an adjusted base offense level of **18**, and this Office waives any right to appeal from any sentence within or above the advisory guidelines range resulting from an adjusted base offense level of **18**. Nothing in this agreement shall be construed to prevent either the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory mandatory minimum provision. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

12. The Defendant agrees that she will not commit any offense in violation of federal, state or local law between the date of this agreement and her sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for her conduct by failing to acknowledge her guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or

failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that she may not withdraw her guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

13. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw her guilty plea, and will remain bound to fulfill all of her obligations under this agreement. The Defendant understands that neither the prosecutor, her counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

14. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Solette A. Magnelli
Assistant United States Attorney

I have had this agreement, including the Sealed Supplement, read to me in Spanish and have carefully reviewed every part of it with my attorney with the aid of an interpreter. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

11/18/08
Date

*Adriana Delcid*
Adriana Delcid

I am Adriana Delcid's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement with her with the assistance of an interpreter. She advises me that she understands and accepts its terms. To my knowledge, her decision to enter into this agreement is an informed and voluntary one.

11/18/08
Date

*Lesley Whitcomb Fierst*
Lesley Whitcomb Fierst

ATTACHMENT A

The defendant stipulates and agrees that if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The defendant also stipulates and agrees that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

**DELCID**, age 42, is a resident of Maryland. Since at least January 1, 2006 and continuing through May of 2008, **DELCID** was associated with three houses of prostitution at any one time within Maryland and Virginia.

At some point, each brothel rotated two to three prostitutes at one week intervals. On Monday of every week, **DELCID** or one of her associates, including her boyfriend Ramon "Huero" Campos and her three adult children, would retrieve the sex workers from one of numerous locations, including the Greyhound bus station in Frederick, Maryland, and take them to one of the three brothels in Maryland or Virginia. **DELCID** knew that the females had traveled into Maryland from other states, including New York, for the purposes of prostituting in her brothels. **DELCID** also knew that some of the females were illegally within the United States. **DELCID** did not generally ask for the age or alien status of the prostitutes who worked in these brothels.

**DELCID** established the hours of her brothel as operating from 11:00 a.m. to 11:00 p.m. every day. She also established a pricing system such that each customer would pay between $25 and $30 for sexual activities. **DELCID** would keep $10-15 and allow the sex worker to keep $15. If business was slow, **DELCID** would pay each sex worker $100/day in compensation. **DELCID** also employed brothel managers to assist the sex workers and customers; she paid them each $350 every week. As to the earnings of each brothel, **DELCID**, Campos, or one of **DELCID's** three children would assist in collecting these monies every week. With three brothels operating at any one time, each employing 2 to 3 women, **DELCID** earned more than $140,000 every year in unreported income. **DELCID** deposited these monies into her various bank accounts, including bank accounts with Suntrust and Wauchula Bank. **DELCID** used these monies to help pay rent and utilities at the brothels, pay her mortgage, make payments on the vehicle used to transport the prostitutes, pay sex workers and brothel managers, purchase supplies for her prostitution businesses, and open two business in Florida.

11/18/08
Date

*Adriana Delcid* (signature)
Adriana Delcid

11/18/08
Date

*Lesley Whitcomb Fierst* (signature)
Lesley Whitcomb Fierst, Esquire